IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MB AVIATION LLC,

    Plaintiff,

v.

HCC CAPITAL LP,

    Defendant.
_____/

## COMPLAINT

Plaintiff MB Aviation LLC ("Plaintiff" or "Seller") hereby sues HCC Capital LP ("Defendant" or "Buyer") and alleges:

## INTRODUCTION

1. This is a breach of contract case stemming from an Aircraft Purchase Agreement dated February 9, 2024, between Plaintiff and Defendant (the "Agreement").[1] After signing the Agreement and depositing a nonrefundable $250,000 down payment into escrow, Defendant unilaterally rejected the Aircraft, despite having no basis to do so under the Agreement. Plaintiff now seeks release of the down payment from escrow as liquidated damages in light of Defendant's default under the Agreement.

## PARTIES

2. Plaintiff is a Florida limited liability company with its principal place of business in Florida.

---

[1] All capitalized terms not otherwise defined herein shall take the definition given in the Agreement.

3. Upon information and belief, Defendant is a Delaware limited partnership and a citizen of California. Upon information and belief, HCC Management, LLC is the general partner of Defendant. HCC Management, LLC is a Delaware limited liability company with its principal address at 6131 E. Highway 191, Odessa, Texas 79762. The members of HCC Management, LLC are Adam Valainis, Peter Vogt, and Hayden Creek Capital, LLC. Adam Valainis is, upon information and belief, a citizen of California. Peter Vogt is, upon information and belief, a citizen of California. Upon information and belief, Peter Vogt is the sole member of Hayden Creek Capital, LLC.

## JURISDICTION

4. The U.S. District Court for the Southern District of Florida has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000. The action is among citizens of different states. Specifically, while Plaintiff is a Florida citizen, Defendant, upon information and belief, is a citizen of California.

5. Personal jurisdiction over Defendant is proper because at material times Defendant has agreed to be subject to personal jurisdiction in the Southern District of Florida through the Agreement.

6. Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to the agreement of the Parties outlined in section 15.2 of the Agreement, as well as 28 U.S.C. § 1391(b), because a substantial part of the acts, events, or omissions that gave rise to the claims pleaded herein occurred in the Southern District of Florida. Specifically, the aircraft that is the subject of the Agreement that forms the basis for this dispute has, at material times, been in this District. Likewise, the relevant inspection of the aircraft took place in this District.

## FACTS

7. Plaintiff owns a Gulfstream Aerospace model G-IV (GIV-SP) aircraft bearing Manufacturer's serial number 1406 and United States Registration No. N86MS (the "Aircraft").

8. On or about February 9, 2024, Plaintiff and Defendant entered into the Agreement for the purchase and sale of the Aircraft. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

9. As documented in Section 5.7 of the Agreement, the Parties anticipated closing on the Aircraft's purchase no later than three (3) weeks after the date of the Agreement (*i.e.*, no later than March 1, 2024).

10. Pursuant to the Agreement, Defendant agreed to pay Plaintiff a total purchase price of $5,400,000 to purchase the Aircraft.

11. Before signing the Agreement, Defendant paid a deposit of $250,000 (the "Deposit") into escrow, to be held by the escrow agent—Aero-Space Reports, Inc. ("Escrow Agent")—subject to the terms and conditions of the Agreement. Section 3.2(a) of the Agreement specifically provided that the Deposit "shall be non-refundable to Buyer upon the execution of th[e] Agreement, subject to the terms and conditions [of the Agreement.]" The Deposit would then be applied to the total purchase price at closing.

12. Pursuant to Section 8 of the Agreement, the Aircraft was being sold to Defendant on an "AS-IS-WHERE-IS" basis and "'WITH ALL FAULTS,' EXCEPT AS TO THE WARRANTY OF TITLE AS SET FORTH IN SECTION 9.1(b) AND IN THE WARRANTY BILL OF SALE."

13. The purchase price Defendant agreed to pay for the Aircraft was relatively low for such an aircraft and was consistent with the "as-is" nature of the Agreement.

14. Despite ample opportunity, and despite agreeing to purchase the Aircraft "as-is," Defendant did not have anyone conduct a visual inspection on its behalf before executing the Agreement.

15. The Agreement provided Defendant with a period of time to conduct an inspection of the Aircraft to identify "Significant Findings" that showed noncompliance with "Technical Condition Requirements" (the "Inspection Period"). Specifically, the Parties agreed that Defendant could have an agreed-upon third party, Boca Aircraft Maintenance, serve as the Inspection Facility and conduct an inspection of the Aircraft.

16. After signing the "as-is" Agreement, Defendant elected not to engage Boca Aircraft Maintenance to perform an inspection. Instead, Defendant engaged a third party, JetGlobal Aviation Consulting & Management Services, LLC ("JetGlobal"), to perform an inspection of the Aircraft. The Agreement did not contemplate an inspection by any third parties other than the agreed-upon Inspection Facility—Boca Aircraft Maintenance.

17. After the Parties executed the Agreement, JetGlobal identified some surface corrosion on the Aircraft and communicated that to Defendant. Defendant then tried to use the surface corrosion as a basis to reject the Aircraft.

18. Section 4.4 of the Agreement governs rejection of the Aircraft after the Parties have signed the Agreement. Section 4.4 allows Defendant to reject the condition of the Aircraft "only upon the Inspection Facility confirming the existence of a Significant Finding with respect to the Aircraft."

19. In the Agreement, the Parties agreed to use Boca Aircraft Maintenance as the "Inspection Facility." The Agreement stated that Defendant would retain Boca Aircraft Maintenance to conduct an inspection of the Aircraft and provide an Inspection Report. That

Inspection Report would identify (i) any Significant Findings that would support a rejection of the Aircraft and (ii) any Discrepancies that required addressing in connection with the purchase and sale of the Aircraft.

20. A "Significant Finding" is defined in the Agreement as "any finding in the Inspection Report establishing that, in the reasonable opinion of the Inspection Facility, the Aircraft cannot be repaired in order to comply with the Technical Condition Requirements." The "Technical Condition Requirements" are set forth on pages 6 and 7 of the Agreement.

21. The agreed-upon Inspection Facility never performed the Pre-Purchase Inspection or provided an Inspection Report. Rather, Defendant retained JetGlobal to provide an inspection report. Even if the report provided by JetGlobal had been issued by the agreed Inspection Facility, the surface corrosion noted in the JetGlobal report did not rise to the level of a "Significant Finding," as defined in the Agreement. Because it was not a Significant Finding, Defendant did not have the right to reject the condition of the Aircraft after signing the Agreement.

22. Despite having no basis to reject the Aircraft under the Agreement, on February 16, 2024, Defendant rejected the Aircraft by way of a Rejection Certificate, contending the Aircraft was rejected under Section 4.4 of the Agreement because of a Significant Finding. A true and correct copy of the Rejection Certificate is attached hereto as **Exhibit 2**.

23. As explained in Plaintiff's February 19, 2024 response to the Rejection Certificate and Notice of Default (the "February 19 Notice of Default"), Defendant's rejection of the Aircraft was improper under the Agreement, whether through Section 4.4 or otherwise. *See* **Exhibit 3** (February 19 Notice of Default). In the February 19 Notice of Default, Plaintiff notified Defendant that it had breached the Agreement by:

    a. Not retaining the agreed Inspection Facility, defined in the Agreement as Boca Aircraft Maintenance, 3300 Airport Road, Suite 121, Boca Raton, Florida. Instead, Defendant retained an unapproved third party, JetGlobal, to perform the inspection.

    b. Failing to have the Inspection Facility issue its Inspection Report within one (1) Business Day after completion of the Pre-Purchase Inspection.

    c. Under Section 4.4 of the Agreement, Defendant could base rejection only "upon the Inspection Facility confirming the existence of a Significant Finding." But the agreed-upon Inspection Facility (i.e., Boca Aircraft Maintenance) never performed the Pre-Purchase Inspection, nor did it confirm the existence of a Significant Finding.

    d. The report provided by JetGlobal was not a sufficient Inspection Report under the Agreement. But even if it were sufficient, the JetGlobal report did not determine that there was a Significant Finding, as defined in the Agreement. Rather, JetGlobal noted several external areas on the Aircraft "raised concerns regarding potential underlying metal corrosion," but made no finding that the Aircraft was not in compliance with (or could not be made to comply with) the Technical Condition Requirements.

24. Realizing its rejection constituted a default of the Agreement, on February 20, 2024, Defendant tried to cure that default through Carter Reum's email to Plaintiff withdrawing its notice of rejection. *See* **Exhibit 4** (February 20, 2024 email).

25. Two days later, on February 22, 2024, Mr. Reum—a member of Defendant and the signatory of the Agreement on Defendant's behalf—sent an email confirming Defendant was

ready to proceed and noting that "if the Aircraft is deemed airworthy and meets the Technical Condition Requirements per the Agreement Buyer stands ready to close."

26. On February 29, 2024, Plaintiff, through counsel, sent Defendant a letter following up on its February 19 Notice of Default (the "February 29 Letter"). In the February 29 Letter, Plaintiff noted that while the JetGlobal report had not identified any Discrepancies under the Agreement, Plaintiff had offered to have the Inspection Facility (Boca Aircraft Maintenance) perform certain quoted repairs, subject to Defendant agreeing that, upon the Aircraft being returned to service after performance of such repairs and otherwise complying with the Technical Condition Requirements, Defendant would proceed to closing under the Agreement. *See* **Exhibit 5** (February 29 Letter).

27. Defendant's counsel responded on March 4, 2024, noting that Defendant was "open to proceeding with the purchase of the Aircraft if the Aircraft can be repaired such that it meets all Technical Condition Requirements." *See* **Exhibit 6** (March 4 Letter). Defendant's counsel further noted that JetGlobal's report contained a list of inspection items that still needed to be cleared by the Inspection Facility.

28. That same day, Plaintiff's counsel responded by email, which, among other things:
   a. Noted that most of the open inspection items were paperwork issues, but that all open items would be cleared prior to closing.
   b. Noted Plaintiff had obtained a quote from the Inspection Facility for addressing the corrosion issues, despite the surface corrosion issues in JetGlobal's report not rising to the level of Discrepancies, as defined in the Agreement.
   c. Requested that Defendant refrain from instructing the Inspection Facility as to how the Inspection Facility should deem the Aircraft airworthy for return to service.

      d. Requested further confirmation that, upon performance of the corrosion work quoted by the Inspection Facility and the Aircraft being returned to service, Defendant was committed to proceed to closing.

*See* **Exhibit 7** (March 4, 2024 email).

    29. On March 5, 2024, Defendant's counsel emailed Plaintiff's counsel, suggesting the Parties should consider entering into a side letter agreement confirming that the open inspection items would be cleared, that the quoted corrosion repairs would be performed, that Defendant would be allowed to monitor the repairs, and that the Parties were committed to closing. *See* **Exhibit 8** (March 5, 2024 email).

    30. That same day, Plaintiff's counsel sent a draft side letter agreement to Defendant's counsel. In the accompanying cover letter, Plaintiff's counsel made clear that a deposit had already been paid to the Inspection Facility to begin the corrosion repair work, and that such work was scheduled to begin immediately. Plaintiff expressed a willingness to delay commencement of the repair work so it would not begin until March 7.

    31. On March 7, 2024, the Parties exchanged communications through counsel. Defendant's counsel was still waiting for instructions, while Plaintiff expressed concern over the unreasonable delay. Plaintiff's counsel noted in an email that Plaintiff did not believe any corrosion repairs were required under the Agreement, but Plaintiff would agree to have them performed and the current due list items cleared in advance of closing. *See* **Exhibit 9** (March 7, 2024 email).

    32. On March 12, 2024, counsel exchanged communications wherein Defendant's counsel noted that Defendant had attempted to coordinate with Boca Aircraft Maintenance to monitor the status of Aircraft repairs. Plaintiff's counsel communicated with Boca Aircraft

Maintenance regarding the repairs, and these communications were later shared as an update with Plaintiff's counsel.

33. On March 14, 2024, Defendant's counsel sent a letter to Plaintiff's counsel (the "March 14 Letter"). Defendant's counsel copied the Escrow Agent and improperly directed the Escrow Agent to refund the Deposit to Defendant within two (2) Business Days. Defendant also purported to terminate the Agreement by virtue of the March 14 Letter. *See* **Exhibit 10** (March 14, 2024 letter from Defendant's counsel).

34. That same day, Plaintiff's counsel responded with a letter clarifying events as they transpired, putting Defendant on notice of a Buyer's Default under Section 14.2 of the Agreement, and providing three (3) business days to cure. *See* **Exhibit 11** (March 14, 2024 letter from Plaintiff's counsel).

35. Despite Plaintiff's attempts to work with Defendant to address Defendant's concerns relating to the surface corrosion on the Aircraft, Defendant continued to reject the Aircraft without appropriate grounds and refused to close on the purchase of the Aircraft.

36. On March 19, 2024, Plaintiff sent a formal declaration of Buyer's Default under the Agreement (the "Termination Notice"). A true and correct copy of the Termination Notice is attached hereto as **Exhibit 12**. At the same time, Plaintiff demanded release of the nonrefundable Deposit to Plaintiff pursuant to the Agreement.

37. Based on Defendant's conduct in default of the Agreement, Plaintiff is entitled to recover the Deposit under Section 14.2 of the Agreement, which provides, in pertinent part:

> [I]f Buyer fails to fully perform an obligation under this Agreement after (a) all conditions precedent to such performance have been satisfied, (b) Buyer receives written notice detailing how it has failed to perform and (c) Buyer fails to cure such failure to perform within three (3) Business Days after receipt of such notice, Buyer shall be in default under this Agreement (a "Buyer's Default"). **Upon the occurrence of a Buyer's Default, Seller, as its sole and exclusive remedy, shall**

>    **have the right to terminate this Agreement and recover the Deposit from Escrow Agent immediately upon termination as liquidated damages** and not as a penalty (whereupon this Agreement shall be of no further force or effect).  The Parties acknowledge and agree that Seller would be actually damaged by a Buyer's Default, but that the precise amount of such damages would be difficult to quantify.

Ex. 1 § 14.2 (emphasis added).

38. All conditions precedent to the bringing of this action have occurred, been waived, or been otherwise satisfied.

## COUNT I:  BREACH OF CONTRACT

39. This is an action against Defendant for damages as a result of Defendant's breach of the Agreement.

40. Plaintiff reincorporates by reference the allegations contained in paragraphs 1 through 38 above as though fully set forth herein.

41. Plaintiff and Defendant entered into the Agreement.

42. Pursuant to the Agreement, Defendant deposited the nonrefundable Deposit into the Escrow Account.

43. Defendant breached the Agreement and is in default by rejecting the Aircraft without any proper grounds and refusing to pay the total purchase price, close on the purchase, and acquire the Aircraft.

44. Plaintiff provided Defendant notice that Defendant's March 14 rejection of the Aircraft constituted a default of the Agreement.  Plaintiff provided Defendant three (3) business days to cure its default.

45. On March 19, 2024, Plaintiff, through counsel, advised Defendant that its failure to withdraw its baseless rejection of the Aircraft was a material default under the Agreement. Plaintiff terminated the Agreement under Section 14.2 and demanded that Defendant take steps

necessary to have the Escrow Agent deliver the full amount of the nonrefundable Deposit to Plaintiff consistent with the Agreement.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendant in the amount of the nonrefundable Deposit, together with court costs and reasonable attorneys' fees recoverable, and for all other appropriate relief.

## COUNT II:  INJUNCTIVE RELIEF

46. This is an action for injunctive relief against Defendant with respect to the nonrefundable Deposit paid by Defendant in connection with the Agreement.

47. Plaintiff reincorporates and re-alleges by reference the allegations contained in Paragraphs 1 through 38 above as though fully set forth herein.

48. This is an action for injunctive relief to (a) mandate Defendant to take all action necessary to cause the Deposit to be released by the Escrow Agent and placed in the Court Registry of this Court pending disposition of this dispute between Plaintiff and Defendant, and (b) prevent Defendant from tampering with, preventing, or otherwise disrupting the release of the Deposit and its placement in the Court Registry.

49. Plaintiff is entitled to the Deposit.

50. Plaintiff will be permanently and irreparably damaged if Defendant is permitted to interfere with the Deposit and its release from the Escrow Agent to Plaintiff.

51. Plaintiff has no adequate remedy at law that will prevent the irreparable harm cited above.

52. There is no further benefit to having the Escrow Agent hold the Deposit, as a better alternative exists in the form of this Court's Registry.  Indeed, placing the Deposit in the Court Registry is likely to prevent both parties from wasting financial resources, and avoid the need for

unnecessary litigation in other venues since the parties have agreed to litigate this dispute in this forum and subject to the laws of Florida.

53. It is in the public interest that the Court grant injunctive relief mandating Defendant to take all action necessary to cause the Deposit to be released by the Escrow Agent and placed into the Court Registry pending disposition by this Court of the breach of contract dispute between Plaintiff and Defendant.

54. A balancing of burdens and benefits as among the Parties leads to the conclusion that no unfair prejudice will be experienced by Defendant as a result of the relief requested herein.

WHEREFORE, Plaintiff respectfully requests that the Court grant the injunctive relief in favor of Plaintiff and against Defendant that will (a) mandate Defendant to take all action necessary to cause the Deposit to be released by the Escrow Agent and placed in the Court Registry pending disposition of this dispute between Plaintiff and Defendant; (b) prevent Defendant from tampering with, preventing, or otherwise disrupting the release of the Deposit and its placement into this Court's Registry; and (c) award Plaintiff its reasonable attorneys' fees and costs recoverable in connection with this action.

Dated:  April 5, 2024            Respectfully submitted,

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Jonathan R. Weiss*_____
Jonathan R. Weiss
Florida Bar No. 57904
Jonathan.weiss@squirepb.com
Bradley W. Crocker
Florida Bar No. 118616
Bradley.crocker@squirepb.com
200 South Biscayne Boulevard, Suite 3400
Miami, FL 33131
Telephone:  305.577.7000
Facsimile:  305.577.7001

*Counsel for Plaintiff MB Aviation LLC*